FILED & JUDGMENT ENTERED
Steven T. Salata

Oct  21  2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE: )
 )  Case No. 13-30835
TRACY LAYNE CAILLAUD )
(formerly TRACY LAYNE CONNEEN) ) Chapter 7
 )
Debtor. )

### ORDER OVERRULING TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION

**THIS MATTER** came before the Court on Debtor's motion to amend bankruptcy schedules to exempt property. A hearing was held on September 23, 2014, at which the Trustee appeared on his own behalf and Debtor, Tracy Layne Caillaud (Caillaud), appeared through attorney Lisa Sperber.  Sperber began representing Caillaud on August 18, 2014, after Caillaud moved to amend her exemptions.  At the hearing, the parties made a number of stipulations that establish the following.

Caillaud filed a voluntary petition for Chapter 7 Bankruptcy on April 19, 2013. The first meeting of creditors was held on May 22, 2013.  Two days later, Caillaud's father died intestate, leaving Caillaud and her two siblings as his sole heirs.  Shortly thereafter, Caillaud signed a sworn Application for Letters of Administration indicating the value of her father's residence to be $189,000.

On July 10, 2013, Caillaud's former counsel, Jefferson V. Mabrito, reminded Caillaud by email that she was required to disclose to the Trustee any property she inherited within six months of bankruptcy. Caillaud replied by email that her father's debts exceeded his assets and that she would not inherit any property from his estate. Caillaud's counsel forwarded the email to the Trustee.

Approximately two months later, Caillaud and her siblings listed their father's residence for sale for $275,000. When the home sold on March 14, 2014, the settlement statement revealed that the home was encumbered by only $172,106.62 in mortgage debts, leaving net sale proceeds of $28,225.40. Those funds were deposited into Caillaud's father's estate account. Acting as coadministrator of her father's estate, Caillaud then disbursed a portion of the sale proceeds to herself.

Caillaud did not disclose the home sale transaction to the Trustee. Specifically, Caillaud never informed the Trustee that the home was under contract, the home had sold, there was equity in the home, her father's estate received proceeds from the sale, or the estate subsequently made a distribution to Caillaud. The Trustee only became aware of the sale while conducting a real property records search in April 2014.

After discovering the undisclosed sale, the Trustee contacted Caillaud's counsel. Caillaud's counsel replied by forwarding Caillaud's previous email indicating that she would not inherit anything from her father's estate. The Trustee then requested a copy of the settlement statement for the home sale. Instead of providing the statement, Caillaud's counsel simply advised the Trustee that the sale of the home netted a profit "in the mid $20k range." Caillaud's counsel further represented that Caillaud received only $6000. The Trustee was not satisfied with this response. He requested to see Caillaud's bank

statements and demanded that she turn over the $6000. The Trustee alerted Caillaud's counsel that Caillaud's failure to notify the Trustee of the distribution and subsequent conversion of estate funds for her own use constituted grounds to revoke her discharge. Caillaud's counsel later informed the Trustee that Caillaud received a much larger amount from her father's estate than previously indicated. During Caillaud's subsequent 2004 examination, she admitted to withdrawing "close to $16,000" from her father's estate account. She also advised the Trustee that she was not then able to turnover her inheritance to the bankruptcy estate, presumably because she already dissipated those funds. Instead, Caillaud's counsel proposed a $500 per month payment plan.

When the Trustee refused to permit Caillaud to make monthly payments, she moved to amend her exemptions on June 30, 2014. According to Caillaud, she has $4980.72 in available exemptions under N.C.G.S. § 1C-1601(a)(2) that she wishes to use to offset a portion of the funds she received from her father's estate. The Trustee objects, arguing that "Debtor's false representations and omissions regarding the Real Property and her conversion of property of the bankruptcy estate funds clearly constitutes bad faith and, as such, the Court should deny her motion to amend exemption elections."

At the hearing on this matter, the parties stipulated to the timeline of events related to the home sale and distribution of funds as well as the admissibility of email correspondence between Caillaud's former counsel and the Trustee, the listing agreement, contract, and settlement statement related to the home sale, a transcript of Caillaud's 2004 examination, and bank statements associated with accounts held by Caillaud's father. The parties further agreed that the United States Supreme Court's

3

recent decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014) dictates the outcome of this issue.

Prior to *Siegel*, bankruptcy courts routinely disallowed a claimed exemption to debtors, such as Caillaud, who concealed assets in bad faith. *In re Hamlett*, 304 B.R. 737, 742 (Bankr. M.D.N.C. 2003) ("Thus, it is a well-established principle of bankruptcy law that amendments to exemptions may be denied upon a showing of bad faith such as concealment of the asset sought to be exempted on the part of the debtor seeking to exempt a previously non-disclosed asset or upon a showing of prejudice to creditors or other parties in interest." (citing, *inter alia*, *In re Yonikus*, 996 F.2d 866 (7th Cir. 1993)). Without an express code provision permitting bankruptcy courts to disallow exemptions for misconduct, the courts did so in reliance on their "powers of equity to prevent abuse of the bankruptcy process." *In re Kestell*, 99 F.3d 146, 147 (4th Cir. 1996) (citations and quotation marks omitted).

In *Siegel*, the Supreme Court considered whether bankruptcy courts possessed the power, either by statute or equity, to deny or surcharge a debtor's exemptions as a result of debtor misconduct. 134 S. Ct. at 1192. The debtor in that case fabricated evidence that a lien existed on his home in an effort to reduce the home's nonexempt value. *Id*. at 1193. In addition to the lien, the debtor claimed the $75,000 California homestead exemption. *Id*. Had the debtor's misrepresentations been correct, the lien, when combined with the debtor's homestead exemption, would eliminate any nonexempt value and thus any incentive for the trustee to sell the home. *Id*. The trustee initiated adversary proceedings, successfully asserting that the lien was fabricated. *Id*. The court concluded that the debtor perpetrated a fraud on his creditors and the court by submitting false

4

evidence. *Id*. During the course of litigation, the trustee incurred over $500,000 in attorney's fees, which the court surcharged against the debtor's homestead exemption. *Id*. The debtor appealed, and the Ninth Circuit Court of Appeals affirmed, holding "the surcharge was calculated to compensate the estate for the actual monetary costs imposed by the debtor's misconduct, and was warranted to protect the integrity of the bankruptcy process." *Law v. Siegel*, 435 F. App'x 697, 698 (9th Cir. 2011).

After granting the debtor's writ of certiorari, the Supreme Court determined that without specific statutory authority, bankruptcy courts do not have the power to deny a debtor's exemptions. *Siegel*, 134 S. Ct. at 1196-97. The Court observed that the trustee's attorney's fees spent to prove the debtor's fraud constituted an administrative expense and that section 522(k) of the Bankruptcy Code generally prohibits charging such costs against a debtor's exemptions. *Id.* at 1195. The Court noted that section 522 "sets forth a number of carefully calibrated exceptions, some of which relate to the debtor's misconduct." *Id.* at 1196. Because "the statute exhaustively specifies the criteria that will render property exempt," *id*., the Court held, "*federal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code," *id*. at 1197. Bad faith is not an enumerated criterion; therefore, the Court reasoned bankruptcy courts lack both the statutory and equitable authority to either surcharge against exemptions or deny exemptions based on bad faith conduct. *Id.* at 1196.

Decisions post-*Siegel* uniformly hold that bankruptcy courts lack the equitable power to deny leave to amend or disallow a claimed exemption based on bad faith. For instance, in *In re Arellano*, the Bankruptcy Court for the Southern District of California considered a debtor's alleged concealment of a bank account and its effect on the debtor's

5

motion to amend exemptions. 2014 WL 4925277 (Bankr. S.D. Cal. Sept. 26, 2014). Based on *Siegel*, the Court reasoned that its "equitable powers are now an insufficient basis for exemption denial even if bad faith or prejudice exists." *Id*. at *3. Likewise, in *In re Gress*, the Bankruptcy Court for the Middle District of Pennsylvania determined that the debtors' purported hiding of assets was not a factor when ruling on exemptions because "under *Law v. Siegel*, equitable considerations cannot be used to disallow exemption that otherwise would be allowable under § 522." 2014 WL 4681708, at *4 (Bankr. M.D. Pa. Sept. 19, 2014). Moreover, in *In re Scotchel*, the Bankruptcy Court for the Northern District of West Virginia noted that "the emerging view of courts interpreting [*Siegel*] have held that courts no longer have the discretion to deny an amended exemption based upon equitable considerations such as a debtor's bad faith or prejudice to creditors." 2014 WL 4327947, at *4 (Bankr. N.D.W. Va. Aug. 28, 2014) (citations omitted). The court further concluded that *In re Tignor*, 729 F.2d 977 (4th Cir. 1984), Fourth Circuit precedent often cited as a basis to deny a debtor's exemption for misconduct, was no longer controlling because *Tignor* relied on *In re Doan*, 672 F.2d 831 (11th Cir. 1982) (*per curiam*), which the Supreme Court expressly abrogated in *Siegel*, 134 S. Ct. at 1196. *Scotchel*, 2014 WL 4327947, at *4.

In light of *Siegel* and its progeny, this bankruptcy court holds that it lacks any statutory or equitable power under federal law to deny an exemption based on a debtor's bad faith or misconduct.

The inquiry into this case is not, however, over. The Supreme Court made clear that "when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct

6

warrant denial of the exemption." *Siegel*, 134 S. Ct. at 1196-97 (citing, *inter alia*, *In re Ansley Bros.*, 153 F. 983, 984 (E.D.N.C. 1907)).  As Caillaud attempts to claim an exemption under N.C.G.S. § 1C-1601(a)(2), we must now turn to North Carolina law to determine whether a debtor's bad faith and misrepresentations are sufficient to withhold an exemption claimed under state law.

The North Carolina General Statutes present only three means by which a debtor may waive a personal property exemption:

(1) Transfer of property allocated as exempt (and in that event only as to the specific property transferred);

(2) Written waiver, after judgment, approved by the clerk or district court judge. The clerk or district court judge must find that the waiver is made freely, voluntarily, and with full knowledge of the debtor's rights to exemptions and that he is not required to waive them; or

(3) Failure to assert the exemption after notice to do so pursuant to G.S. 1C-1603. . . .

N.C.G.S. § 1C-1601(c); *see also* 15 Strong's North Carolina Index 4th *Execution and Enforcement of Judgments* § 38 (2014).  Outside the limited scope of that statute, North Carolina law provides no further guidance on this topic.  In light of the complete lack of other North Carolina authority that would waive a debtor's exemptions combined with long-standing precedent that exemptions are to be applied liberally, *Elmwood v. Elmwood*, 295 N.C. 168, 185, 244 S.E.2d 668, 678 (1978), it appears that wrongful actions by debtors have little bearing on their eligibility to claim state law exemptions.

The facts strongly suggest that Caillaud attempted to mislead her creditors, the Trustee, and this bankruptcy court, convert estate property, and abuse the safe harbors of the bankruptcy system.  Yet, this case does not implicate the statutory mechanisms for

7

waiving an exemption previously discussed.[1] Consequently, there appears to be no choice but to overrule the Trustee's objection. Caillaud is thus permitted to amend her exemptions to use her remaining $4980.72 available under N.C.G.S. § 1C-1601(a)(2).

Caillaud has won this battle, but may yet lose the war. As the Trustee initially indicated, the aforementioned acts could cost Caillaud her discharge, or worse. *Siegel*, 134 S. Ct. at 1198 ("There is ample authority to deny the dishonest debtor a discharge.") (citing 11 U.S.C. § 727(a)(2)-(6)). Additionally, the Federal Rules of Bankruptcy Procedure authorize the imposition of "sanctions for bad-faith litigation conduct, which may include 'an order directing payment . . . of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.' " *Id.* (citation omitted). Because a bankruptcy court's monetary sanction arises postpetition, it "survives the bankruptcy case and is thereafter enforceable through the normal procedures for collecting money judgments." *Id.* (citing 11 U.S.C. § 727(b)). As of yet, no such motion has been filed. Finally, trustees may consider referring unscrupulous debtors to the United States Attorney's Office as "[f]raudulent conduct in a bankruptcy case may also subject a debtor to criminal prosecution under 18 U.S.C. § 152, which carries a maximum penalty of five years' imprisonment." *Id.* The Trustee in this case need not do so as the Court directs the Clerk to forward a copy of this order to the United

---

[1] Waiver may be found under N.C.G.S. § 1C-1601(C)(1) when a debtor transfers property allocated as exempt. Property of the estate and a debtor's exemptions are, however, determined as of the filing date. Meaning, subsection 1C-1601(C)(1) is not applicable in this case because of the timing of the disbursement and possible transfer of estate property. Transfers post petition may be subject to avoidance by the Trustee, but the Court issues no opinion as to whether any alleged post petition transfers are recoverable in this case.

States Attorney's Office for the Western District of North Carolina to weigh whether Caillauds's conduct warrants criminal charges.

This bankruptcy court does not take debtor fraud lightly given the harm and expense that such behavior causes in a system premised on full disclosure. But, as *Siegel* points out, it is the role of the legislature, not the courts, to balance the onus exemption limits impose on debtors as against the burden that exemptions visit on creditors. *Id*. at 1197-98 (citation omitted). For the present though, the motion to amend must be allowed.

**SO ORDERED.**

**This Order has been signed electronically.**　　　　　　　　　　　　　　　　**United States Bankruptcy Court**
**The judge's signature and the court's seal**
**appear at the top of the Order.**